UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LARRY RAY GREEN,

                          Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner of
Social Security,

                          Defendant.

Case No. 3:13-cv-05458-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

       Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny

benefits should be reversed and that this matter should be remanded for further administrative

proceedings.

                        FACTUAL AND PROCEDURAL HISTORY

       On December 12, 2005, plaintiff filed an application for disability insurance benefits,

alleging disability as of November 7, 2002, due to depression, post traumatic stress disorder

("PTSD"), pelvic injury, and partial paralysis of the right food.  *See* Administrative Record

("AR") 168-72, 194.  His date last insured was September 30, 2010.  AR 42.  The application

was denied upon initial administrative review and on reconsideration.  *See* AR 88-90.  A hearing

ORDER - 1

was held before an administrative law judge ("ALJ") on August 26, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert, W. Scott Mabee, Ph.D., and a vocational expert. *See* AR 40-87. At the hearing, plaintiff amended his alleged onset date to July 1, 2008. AR 43.

On January 12, 2012, the ALJ issued a decision in which plaintiff was determined to be not disabled. *See* AR 16-36. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 16, 2013, making the ALJ's decision defendant's final decision. *See* AR 1-6; *see also* 20 C.F.R. § 404.981, § 416.1481. On June 11, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. *See* ECF #3. The administrative record was filed with the Court on August 29, 2013. *See* ECF #10. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further administrative proceedings, because (1) the ALJ erred in evaluating the medical evidence in the record, and (2) new evidence incorporated into the record by the Appeals Council materially undermines the ALJ's decision. The Court agrees the ALJ erred in determining plaintiff to be not disabled and orders that the defendant's decision be reversed and this matter remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v.*

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F. Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Sec. of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and

---

[1] As the Ninth Circuit has further explained:

. . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

conflicts in the medical evidence.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Where the medical evidence in the record is not conclusive, "questions of credibility and

resolution of conflicts" are solely the functions of the ALJ.  *Sample v. Schweiker*, 694 F.2d 639,

642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld."  *Morgan v. Comm'r

of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies

in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain

factors are relevant to discount" the opinions of medical experts "falls within this responsibility."

*Id.* at 603.

　　　　In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons."  *Reddick*, 157 F.3d at 725.  The ALJ can do this

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings."  *Id.*  The ALJ also may draw inferences

"logically flowing from the evidence."  *Sample*, 694 F.2d at 642.  Further, the Court itself may

draw "specific and legitimate inferences from the ALJ's opinion."  *Magallanes v. Bowen*, 881

F.2d 747, 755, (9th Cir. 1989).

　　　　In evaluating the weight to be given to the opinions of medical providers, Social Security

regulations distinguish between "acceptable medical sources" and "other sources."  Acceptable

medical sources include, for example, licensed physicians and psychologists, while other non-

specified medical providers are considered "other sources."  20 C.F.R. §§ 404.1513(a) and (d),

416.913(a) and (d); Social Security Ruling (SSR) 06-03p.

　　　　The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of either a treating or examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

ORDER - 4

only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her.  *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  *See Lester*, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Less weight may be assigned to the opinions of other sources.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).  However, the ALJ's decision should reflect consideration of such opinions, SSR 06-3p, and the ALJ may discount the evidence by providing reasons germane to each source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) and *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also* SSR 06-03p (ALJ should explain weight given to other source opinions or otherwise ensure that discussion of the evidence allows for following the ALJ's reasoning "when such opinions may have an effect on the outcome of the case").

ORDER - 5

Here, plaintiff challenges the ALJ's assessment of the opinions of examining

psychologist David Widlan, Ph.D.; non-examining psychologists John Robinson, Ph.D., Leslie

Postovoit, Ph.D., and W. Scott Mabee, Ph.D.; and treating mental health providers Joyce Moody,

MSW, LICSW, and Dwight Randolph, LMHC.

A.  Dr. Widlan

Dr. Widlan examined plaintiff in April 2010, administered a mental status exam, and

reviewed some of plaintiff's medical records.  AR 673-677.  He assigned a GAF score of 46 and

opined:

> Larry suffers from depression and anxiety.  The Mental Status Exam indicated
> adequate memory and concentration with possible deficits in social reasoning.  In
> terms of the latter he may lack insight and may suffer from a personality disorder.
> He was able to perform simple, repetitive commands as well as moderately
> complex tasks with some added difficulty on the latter.  As such he is cognitively
> able to accept instruction from a supervisor.  He appears to be experiencing
> significant deficits in adaptation and has become quite socially isolated most
> recently, although he continues to attend church.  He is capable of following a
> three-step command though may require moderate accommodations in this regard.

AR 676-77.

The ALJ provided the following discussion of Dr. Widlan's opinion:

> The claimant told Dr. Widlan that he experienced considerable anhedonia and
> difficulty sleeping (Ex. 15F/1).  This statement to Dr. Widlan is inconsistent,
> however, with his May 2010 report to treating provider, James Burke, PA-C, in
> which he stated that he "has been sleeping 7 hours at night" and that he was
> updating his book that he was selling online (Ex. 25F/18).
>
> The claimant also told Dr. Widlan that he was last employed in November 2005
> as a medical assistant, however, this statement is also inconsistent with the
> claimant's report to treating providers that he had recently worked for an internet
> company, and was in the process of writing his second book (Ex. 15F/2; 25F).
> The claimant's activities are also inconsistent with his statement to Dr. Widlan
> that he had difficulty sustaining attention (Ex. 15F/4).
>
> The claimant's lethargic, apathetic, and depressed presentation for Dr. Widlan
> was also inconsistent with his behavior during routine appointments, in which he
> was observed to be alert, pleasant, and "cooperative" with an affect that was "full

ORDER - 6

range" (Ex. 15F/2; 25F/13). The claimant also appeared not to initially understand Dr. Widlan's directions, however, this behavior is also inconsistent with the claimant's cognitive functioning throughout the record, including the claimant's routine progress notes.

Based on the claimant's presentation, which was notably inconsistent with his unguarded behavior noted in the records of his treating providers, Dr. Widlan opined that the claimant's prognosis was guarded and he provided the claimant with a global assessment of functioning (GAF) score of 46 (Ex. 15F/4). Such a GAF score is indicative of an individual with serious symptoms or a serious impairment in social or occupational functioning. Although an individual's GAF score is not equivalent to a finding of disability under the five-step sequential evaluation set out in the Regulations, such a score is not consistent with the claimant's overall record. Accordingly, little weight can be given to Dr. Widlan's opinion.

AR 26-27.

Plaintiff contends the ALJ failed to give specific and legitimate reasons to reject Dr. Widlan's opinion. The Court agrees that the ALJ's discussion of Dr. Widlan's opinions is legally insufficient, with the exception of her rejection of the GAF score of 46, which the ALJ properly rejected because it was inconsistent with the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions). This finding is supported by substantial evidence, including GAF scores of 60 assessed by plaintiff's treating mental health provider and numerous treatment records indicating plaintiff was stable with unremarkable mental status findings. *See* AR 440-63, 539, 547, 725, 824, 827. Plaintiff does not argue otherwise.

The ALJ, however, failed to provide either clear and convincing or specific and legitimate reasons to discount the remainder of Dr. Widlan's opinions. In fact, the ALJ did not discuss the doctor's opinions at all. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms,

diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  Instead, the ALJ offered reasons to attack plaintiff's credibility, pointing to non-credible statements plaintiff made to Dr. Widlan.  But the ALJ made no link between plaintiff's non-credible statements and Dr. Widlan's ultimate opinions.  Because Dr. Widlan also reviewed medical records, conducted a mental status examination, and observed plaintiff's presentation during the examination, it is not at all apparent what impact, if any, plaintiff's non-credible statements had on Dr. Widlan's opinions.  Defendant nevertheless contends the ALJ properly rejected Dr. Widlan's opinion because it was based to a large extent on plaintiff's discredited self-reports.  *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  The ALJ made no such finding.  *See* AR 26-27.  As such, the Court cannot rely on this post hoc rationalization.  *Bray v. Comm'r of the Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court reviews ALJ's decision "based on the reasoning and factual findings offered by the ALJ— not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking") (citations omitted).

The ALJ also erred by discounting Dr. Widlan's opinion because plaintiff presented as lethargic, apathetic, and depressed during the examination.  There is no dispute that plaintiff has depression, and the inconsistency between his presentation during Dr. Widlan's examination and his presentation during some routine appointments is not meaningful, particularly given that one treating provider observed depressive symptoms during appointments in the months following Dr. Widlan's examination.  *See* AR 724, 826.

The ALJ's erroneous rejection of Dr. Widlan's opinion was harmful because the RFC does not account for all of the limitations assessed by Dr. Widlan, particularly the doctor's opinion that plaintiff had significant deficits in adaptation.  *See Molina*, 674 F.3d at 1111, 1115

ORDER - 8

1    (court may only reverse for harmful error, and error is harmful where it is of consequence to the

2    ultimate nondisability determination).  On remand, the ALJ should reconsider Dr. Widlan's

3    opinion and, as necessary, revise plaintiff's RFC and proceed with steps four and five of the

4    sequential evaluation process.

5        B.  Dr. Robinson and Dr. Postovoit

6        The ALJ gave significant weight to the opinion of state agency consultant Dr. Postovoit,

7    who affirmed the opinion of state agency consultant Dr. Robinson.  AR 27.  Plaintiff contends

8    this finding was erroneous because the doctors' opinions were contrary to the other relevant

9    medical opinions in the record.  However, "the report of a nonexamining, nontreating physician

10   need not be discounted when it 'is not contradicted by *all other evidence* in the record.'"

11   *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (quoting *Magallanes*, 881 F.2d at 752

12   (emphasis in original)).  As the ALJ reasonably found, the state agency doctors' opinions are

13   consistent with plaintiff's routine progress notes (AR 27, 440-63, 539, 547, 725, 824, 827), as

14   well as with his reported book-writing activities, which included writing his first book in three

15   weeks. AR 25-27, 61-63.  Thus the ALJ's adoption of the non-examining psychologists'

16   opinions was not erroneous.

17       Plaintiff also argues the ALJ erred by failing to acknowledge Dr. Robinson's finding that

18   plaintiff had concentration deficits and no insight into his problems.  To the contrary, the ALJ

19   incorporated Dr. Robinson's opinion regarding concentration deficits into the RFC by assessing

20   a limitation to simple, routine tasks, and the ALJ was not required to discuss plaintiff's lack of

21   insight because this is not a functional limitation.  *See Turner*, 613 F.3d at 1223 (ALJ

22   incorporated opinions into RFC by assessing limitations "entirely consistent" with limitations

23   assessed by physician; ALJ not required to provide clear and convincing reasons to reject

ORDER - 9

physician's statement when statement did not assess any functional limitations).

In sum, plaintiff fails to establish harmful error in the ALJ's consideration of the state agency doctors' opinions.

C.  Dr. Mabee

Non-examining medical expert Dr. Mabee testified at the hearing that plaintiff's ability to persist was markedly limited.  AR 28.  Dr. Mabee explained this opinion was based on the fact that none of plaintiff's multiple work activities were sustained for a very long period of time.  AR 72.  Dr. Mabee further explained that plaintiff's tendency to avoid and withdraw from situations as a way of coping would likely affect his attendance and consistent work behavior.  *Id.*

The ALJ gave very little weight to Dr. Mabee's opinion:

This portion of Dr. Maybee's opinion is inconsistent, however, with the claimant's ability to write two books, one of which was published in 2009.  It is also inconsistent with the claimant's persistence at selling his books online.

Dr. Mabee's opinion regarding the claimant's marked limitation is also inconsistent with the claimant's 2009 and 2010 work activities for an internet company.  The record shows that the claimant was separated from that job, due to economic factors, rather than any disabling limitation.  In addition, the claimant's contemporaneous VA treatment records indicate that the claimant['s] condition was stable and treated with psychotherapy and medications (Ex. 25F).

AR 28.

An ALJ may reject a physician's opinion that is inconsistent with the claimant's level of activity.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  Plaintiff nevertheless contends it was improper for the ALJ to rely on his writing activities because they are not inconsistent with Dr. Mabee's opinion.  The Court disagrees.  Plaintiff testified that he wrote his first book in 2009, published it with his own money, and figured out how to have a Kindle version of the book sold on Amazon.com.  AR 61-62.  He also reported to medical providers

ORDER - 10

during the relevant time period that he was working on a second book.  *See* AR 453.  Despite

plaintiff's contentions to the contrary, the Court finds these facts sufficient to support the ALJ's

finding that plaintiff's writing activities were inconsistent with Dr. Mabee's opinion of marked

limitation in persistence.  *See Richardson*, 402 U.S. at 401 (substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion").

Plaintiff further argues the ALJ erroneously relied on his work activities with the internet

company and ignored or rejected evidence showing fluctuations in his functioning.  The Court

need not resolve these questions, however, because even if the ALJ erred as plaintiff claims, the

error would be harmless given that the ALJ properly discounted Dr. Mabee's opinion based on

plaintiff's writing activities.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533. F.3d 1155,

1162 (9th Cir. 2008) (including an erroneous reason among other reasons is harmless error where

the other reasons are supported by substantial evidence and the erroneous reason does not negate

the validity of the overall determination).

Plaintiff also contends the ALJ erroneously failed to discuss Dr. Mabee's opinion that

plaintiff could not sustain work outside of a "benign" work environment.  Defendant responds

that the ALJ did not err in this respect because Dr. Mabee was merely speculating about the type

of supervisor or work culture in which plaintiff would thrive, and he did not provide any

functional limitation.

During the hearing, Dr. Mabee responded to questioning from plaintiff's counsel by

stating that a supportive supervisor would be "beneficial" to plaintiff but that he did not need a

structured work setting, such as a sheltered workshop.  AR 75.  Plaintiff's counsel responded,

"Right, and I, actually, wasn't asking about a true sheltered workshop, but are we talking about a

situation where he might end up having more either absenteeism or off-task behavior if he didn't

ORDER - 11

have a supportive environment, particularly, a supportive supervisor, who could kind of help him and keep him redirected and so forth." AR 76. Dr. Mabee answered, "If not a supportive one, then at least a benign one. I think, given the personality styles that we talked about as well as the difficulties with sustaining or permissive types of behavior, work setting that is more, quote unquote, punishing, then you are going to see greater difficulties with attendance and maintaining work." *Id.*

As this matter is being remanded for reconsideration of Dr. Widlan's opinion, the Court deems it appropriate for the ALJ—rather than the Court—to consider in the first instance Dr. Mabee's statements regarding a "benign" work environment or supervisor. Thus, on remand, the ALJ should consider and provide a discussion of the above-quoted portions of Dr. Mabee's testimony regarding a "benign" work environment or supervisor and any limitations assessed by the doctor. If the ALJ deems it appropriate, she should recontact the doctor for clarification or additional information, or otherwise further develop the record. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

D. Ms. Moody

Ms. Moody began treating plaintiff in 1999. AR 793. On July 12, 2010, she completed a form on which she indicated plaintiff had a number of marked and moderate limitations, including marked limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. AR 792. The ALJ gave very little weight to Ms. Moody's opinion:

ORDER - 12

[It] is inconsistent, however, with her own routine progress notes in the record from the exact same day.  Specifically, during the claimant's July 12, 2010 appointment, Ms. Moody observed that the claimant's thought content was "organized and goal directed"; his speech was "coherent and unimpaired"; "his affect was appropriate and unremarkable"; and his sleep "was largely unimpaired and restful" (Ex. 25F/15).  Ms. Moody provided the claimant with a GAF score of 60, which is indicative of an individual with only mild to moderate symptoms (Ex. 25F/15).  This unguarded treatment note from Ms. Moody is inconsistent with her opinion that the claimant had marked limitations (Ex. 22F/3).

AR 28-29.

Plaintiff contends the ALJ erroneously rejected Ms. Moody's opinion by ignoring the ten year treatment history in favor of one treatment note that happened to be completed on the same day as the form.  The problem with plaintiff's argument is that all of Ms. Moody's treatment notes from the relevant time period are essentially consistent with the note relied upon by the ALJ.  In March and April 2010, Ms. Moody noted no significant abnormalities on mental status exam and "appropriate affect with normal mood."  AR 539, 727.   In June 2010, Ms. Moody assigned a GAF of 60 and again noted no significant abnormalities on mental status exam and euthymic mood.  AR 827.  Plaintiff also asserts that the ALJ failed to show how the treatment notes were inconsistent with Ms. Moody's opinion.  What is clear in the ALJ's opinion, however, is she found that Ms. Moody's treatment notes did not support her opinion regarding plaintiff's limitations.  This was a germane reason to discount Ms. Moody's opinion, and it is supported by substantial evidence in the record.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province"); *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").  As such, plaintiff fails to establish harmful error in the ALJ's

ORDER - 13

consideration of Ms. Moody's opinion.

E. Mr. Randolph

In May 2011, approximately eight months after plaintiff's date last insured, plaintiff's treating counselor, Mr. Randolph, completed a form on which he indicated plaintiff had numerous moderate limitations and a marked limitation in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 795-97. Mr. Randolph wrote:

> I have not had direct access to Mr. Green for the period of time specified in your ROI. Therefore, responses that seek information based on long term contact (continuous) does not appear to be appropriate. They ask me to respond to his ability to hold down a 'job' for a period of time. I assume from what I gathered from Larry and records available to me that he has been on disability for a significant (continuous[]) period of time that encompasses several years. The records verify his disability. I accept the validity of the records.

AR 797.

The ALJ gave very little weight to Mr. Rudolph's opinion because it was inconstant with the routine progress notes in the record, in which plaintiff "discussed writing a second book, working for an internet company, and appearing pleasant and cooperative." AR 29. The ALJ also found that Mr. Rudolph's opinion was inconsistent "with his own statement that he did not have direct access to the claimant for the time period requested." *Id.*

Plaintiff contends the ALJ did not provide a germane reason for rejecting Mr. Rudolph's opinion, however he fails to acknowledge the ALJ's finding that Mr. Rudolph's opinion was inconsistent with the medical record. An ALJ may properly reject an opinion that is conclusory and inconsistent with the record. *See generally Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986). As discussed above with

ORDER - 14

respect to Ms. Moody, plaintiff's treatment records were generally unremarkable and thus

provide substantial evidence for the ALJ's finding. *See, e.g.* AR 539, 727, 872. Accordingly,

plaintiff has not shown the ALJ committed harmful error in rejecting Mr. Rudolph's opinion.

II.     The New Evidence Incorporated into the Record by the Appeals Council

        As this matter is being remanded for further proceedings, the ALJ should consider the

new evidence incorporated into the record by the Appeals Council.

III.    This Matter Should Be Remanded for Further Administrative Proceedings

        The Court may remand this case "either for additional evidence and findings or to award

benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court

reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the

agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record

that the claimant is unable to perform gainful employment in the national economy," that

"remand for an immediate award of benefits is appropriate." *Id.*

        Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan

v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
> claimant's] evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled were such
> evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

        Here, remand is the appropriate remedy so that the ALJ can reconsider the medical

ORDER - 15

evidence regarding the limiting effects of plaintiff's mental health conditions.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled.  Accordingly, defendant's decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 16th day of May, 2014.


Karen L. Strombom
United States Magistrate Judge

ORDER - 16